IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| JITKA ROTSCHILD, | : | HON. JEROME B. SIMANDLE |
| Plaintiff, | : | Civil No. 10-5404 (JBS/JS) |
| v. | : | **OPINION** |
| JANET NAPOLITANO, et al., | : |  |
| Defendants. | : |  |

APPEARANCES:

Jeffrey T. Kampf, Esq.
JAY AND KAMPF
339 Bloomfield Avenue
Caldwell, NJ 07006
      Counsel for Plaintiff

Jennifer A. Bowen, Trial Attorney
U.S. DEPARTMENT OF JUSTICE
Office of Immigration Litigation
District Court Section
P.O. Box 868
Ben Franklin Station
Washington, DC 20005

      -and-

Paul J. Fishman
United States Attorney
      By:  Jordan Milowe Anger
           Assistant U.S. Attorney
OFFICE OF THE U.S. ATTORNEY
970 Broad Street
7th Floor
Newark, NJ 07102
      Counsel for Defendants

**SIMANDLE**, District Judge:

## I.   INTRODUCTION

This case involves a petition for judicial review of the denial of Plaintiff's application for naturalization.  Plaintiff also seeks a declaratory judgment barring the rescission or invalidation of her lawful permanent resident status, and finding that she has been and continues to be a lawful permanent resident of the United States.  The matter is before the Court on Defendants' motion to dismiss and, in the alternative, for summary judgment.  [Docket Item 6.][1]  The principal issues are whether Plaintiff sufficiently alleges and adduces evidence that she was lawfully admitted, and whether Plaintiff's claim for declaratory judgment is ripe.

## II.   BACKGROUND

In the American immigration and citizenship system, individuals can be lawfully present in the United States under a number of possible statuses.  A non-citizen can be paroled into the country at the discretion of the Attorney General without formal admission or immigration status on a temporary basis.  8 U.S.C. § 1182(d)(5).  A non-citizen can receive a nonimmigrant

---

[1]   Defendants are the Secretary of the Department of Homeland Security, Janet Napolitano, the Director of USCIS, Alejandro Mayorkas, and District Director of USCIS for New Jersey, John Thompson.

visa, permitting the individual to seek entry into the country
for temporary travel, work, or study, among other categories.  8
U.S.C. § 1201; 8 U.S.C. § 1101(a)(15).  A non-citizen can also
become a lawful permanent resident (LPR), with permission to
remain indefinitely, on the basis of certain family
relationships, among other bases.  8 U.S.C. § 1151; 8 U.S.C.
1153(a).  And, ultimately, a non-citizen can apply for
naturalization to become a United States citizen.

Plaintiff, Jitka Rotschild, was born in what was then
Czechoslovakia and is a citizen of the Czech Republic who entered
the United States on a nonimmigrant visa on or about March 19,
1992, with permission to remain for one year.  Compl. ¶ 8; Defs.'
Ex. J ("USCIS Denial of Naturalization") 2-3.  Two years later,
Plaintiff married Tomas Rotschild who, at the time, was a lawful
permanent resident of the United States.  Compl. ¶ 8.  A citizen
or lawful permanent resident may petition for official
recognition of a relationship to a nonimmigrant spouse, 8 U.S.C.
§ 1154(a)(1)(B), which if granted provides the spouse a basis for
petitioning for lawful permanent resident status.  After their
marriage, Mr. Rotschild filed a petition to classify Plaintiff as
his immediate relative.  Compl. ¶ 8.[2]  This petition was

---

[2]  Effective March 1, 2003, the INS, under the direction of
the Attorney General, ceased to exist and its functions were
transferred to U.S. Citizenship and Immigration Services (USCIS)
in the Department of Homeland Security (DHS).  The events
relating to Plaintiff's application for LPR status occurred

approved, and Plaintiff was placed in line for a visa number.

On January 28, 1998, Plaintiff submitted an application to adjust her status to that of an LPR, a procedure permitting an individual to change immigration status while remaining in the United States.  Compl. ¶ 11.[3]  At the time her application to adjust status was filed, Plaintiff characterized her status as "out of status" because she had stayed beyond the one-year period authorized by her classification status.  Defs.' Ex. C ("Pl.'s I-485 application to adjust status").

While her application to adjust status was pending, Plaintiff voluntarily departed the United States "a few times" to visit her ailing grandmother in the Czech Republic.  Apparently unbeknownst to Plaintiff, these departures placed her into a category of nonimmigrants affected by an amendment to the immigration laws.  The statute provides that any non-citizen who "was unlawfully present in the United States for a period of more than 180 days but less than 1 year, [and who] voluntarily

---

during INS's existence, while the events pertaining to Plaintiff's application for naturalization occurred during USCIS's existence.

[3]  On that day, Plaintiff also applied for something called advance parole, which authorizes an individual to enter the United States temporarily without being formally admitted or without immigration status.  8 U.S.C. § 1182(d)(5).  Advance parole is used by nonimmigrants who are seeking adjustment of status so that they can leave the country and return without obtaining a new visa while they wait on their adjustment of status application.  8 C.F.R. § 1245.2(a)(4)(ii)(B).  Plaintiff's advance parole was approved on January 30, 1998.  Compl. ¶ 11.

departed the United States" before commencement of removal proceedings "and again seeks admission within 3 years of the date of such alien's departure or removal" is inadmissible.  8 U.S.C. § 1182(a)(9)(B)(i)(I).  An amendment to the statute further defined unlawful presence to include "if the alien is present in the United States after the expiration of the period of stay authorized by the Attorney General . . . "  8 U.S.C. § 1182(a)(9)(B)(ii).  Consequently, by voluntarily departing prior to approval of her adjustment of status application, Plaintiff was precluded from obtaining LPR status without a waiver of inadmissibility under 8 U.S.C. § 1182(a)(9)(B)(v).  That provision permits the Attorney General to waive the inadmissibility created by operation of 8 U.S.C. § 1182(a)(9)(B)(i)(I) when necessary to avoid extreme hardship to a lawfully resident spouse of the inadmissible individual.

Plaintiff does not contend that she filed a written waiver application in conjunction with her adjustment of status application.  Compl. ¶ 17.  However, in connection with her application for permanent residence, Plaintiff appeared for an interview with an immigration officer, at which time "absolutely all of the information regarding her initial admission, her marriage to Mr. Rotschild, his I-130 application, his naturalization, and her departure and reentry on advanced parole," as well as the hardship experienced by Plaintiff and Mr.

Rotschild, were disclosed.  Id. ¶¶ 13, 12B.  Plaintiff's application to adjust status was approved on April 5, 1999, and she was granted LPR status.  Id. at 13; Defs.' Ex. C.[4]

On September 8, 2006, Plaintiff filed an application to naturalize as a United States citizen.  Compl. at 14; Def.'s Ex. B.  USCIS denied the naturalization application on September 22, 2007, citing the lack of evidence that Plaintiff received a waiver.  Defs.' Ex. J.  The USCIS denial stated that because there was no evidence that Plaintiff received a waiver, her adjustment of status application was "approved in error" and Plaintiff was therefore ineligible to become a naturalized citizen.  Id. at 3-4.  Plaintiff sought administrative review of the denial, which was denied by USCIS on April 10, 2010 on the grounds that Plaintiff was statutorily ineligible to naturalize because she had "received [her] permanent residence status unlawfully."  Def.'s Ex. K (Pl.'s Form N-336 denial) at 3.

---

[4]  Defendants note that Plaintiff's application for adjustment of status was approved by Robert T. Schofield.  Defs.' Mot. at 5.  Defendants also state that Mr. Schofield, referenced in the Complaint as the Assistant District Director at the Washington District office of the INS and an individual to whom Mr. Rotschild wrote requesting help in finalizing his naturalization process, approved Plaintiff's application for advance parole.  Id. at 5; Compl. at n.2.  Defendants submit a United States Attorney's Office press release detailing Mr. Schofield's 2006 guilty plea to bribery of a senior public official and unlawful procurement of citizenship or naturalization.  See Defs.' Ex. I.  However, Defendants do not allege that the charges are related to the present case.  As such, Mr. Schofield's guilty plea is not relevant and will not be considered here.

Plaintiff filed her Complaint with this Court on October 19, 2010. [Docket Item 1.] Plaintiff seeks review of the denial of an application for naturalization, pursuant to 8 U.S.C. § 1421(c).[5] Plaintiff also seeks declaratory judgment that USCIS cannot rescind or invalidate her LPR status, that the denial of her naturalization cannot be considered an invalidation of her LPR status, and that her LPR status is valid. Defendants make three arguments in the present motion: first, that the declaratory relief sought is unripe, requiring dismissal under Rule 12(b)(1), Fed. R. Civ. P.; second, that Plaintiff has failed to allege entitlement to naturalization because she does not allege she filed a written waiver application to obtain her LPR status, requiring dismissal under Rule 12(b)(6), Fed. R. Civ. P.; and third, that Defendants are entitled to summary judgment on the issue of waiver pursuant to Rule 56, Fed. R. Civ. P., because Plaintiff has not adduced any evidence of waiver.

---

[5] "A person whose application for naturalization under this subchapter is denied, after a hearing before an immigration officer . . . may seek review of such denial before the United States district court for the district in which such person resides in . . . Such review shall be de novo and the court shall make its own findings of fact and conclusions of law and shall, at the request of the petitioner, conduct a hearing de novo on the application." 8 U.S.C. § 1421(c).

## III.   SUBJECT MATTER JURISDICTION

### A.   Standard of Review

Defendants move to dismiss Plaintiff's claim seeking declaratory judgment for lack of subject matter jurisdiction, arguing that there is no case or controversy to be resolved by declaratory judgment.  The subject matter of federal courts is restricted to "cases" and controversies."  U.S. Const. art. III, § 2.  Among the components of whether a plaintiff has presented a case or controversy to be resolved is whether the plaintiff is properly a party to a justiciable dispute, a concept called standing, and whether the matter is properly reviewed at this time, a concept called ripeness.  See Presbytery of N.J. of the Orthodox Presbyterian Church v. Florio, 40 F.3d 1454, 1462 (3d Cir. 1994).  To have standing, a party must present an actual or imminent injury that is fairly traceable to the challenged action of the defendant and that is likely to be redressed by the Court. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). For the matter to be ripe for review, the Court must be satisfied that the issues are ready for judicial decision and that waiting for further development would work some hardship on the parties. See Abbott Laboratories v. Gardner, 387 U.S 136, 149 (1967).

In this case, as is somewhat common, the concepts of standing and ripeness overlap.  That is, the question of whether Plaintiff is threatened with imminent injury (standing) is nearly

identical to the question of whether there is hardship to the parties in withholding court consideration until there is enforcement action (ripeness).  See MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 128 n.8 (2007) (noting the frequent overlap of these concepts).  When the question of whether there is a case or controversy involves whether it is appropriate for the Court to issue declaratory judgment prior to an enforcement action, the matter is usually considered one of ripeness, though it may also involve concepts from standing doctrine to the extent it calls into question the imminence of injury.

The Third Circuit employs a three part test to determine ripeness in the context of pre-enforcement declaratory judgment: "first, the adversity of the parties' interests; second, the probable conclusiveness of a judgment; [and] third, the practical utility to the parties of rendering a judgment."  NE Hub Partners, L.P. v. CNG Transmission Corp., 239 F.3d 333, 342 (3d. Cir. 2001) (citing Step-Saver Data Systems, Inc. v. Wyse Technology, 912 F.2d. 643 (3d Cir. 1990)).


**B.  Analysis**

Defendants contend that there is no case or controversy here because USCIS has not instituted any proceedings as to Plaintiff. Moreover, they point out, in Garcia v. Attorney General of U.S., 553 F.3d 724 (3d Cir. 2009), the Third Circuit Court of Appeals

9

held that even when an immigrant obtained LPR status by fraud, federal law forbids removal of the immigrant after five years have elapsed since the adjustment of status.[6]  Id. at 727-28 (citing 8 U.S.C. § 1256(a)).  Defendants reason that because Garcia forbids both rescission of Plaintiff's LPR status and removal proceedings, Plaintiff's claim for declaratory judgment is not ripe for review as there is no case or controversy between the parties.

Plaintiff argues that even if Defendants' representation that they intend to follow Garcia were binding, Plaintiff still faces the threat of removal if she leaves the boundaries of the Third Circuit since four other circuits have found that removal is not subject to a five year statute of limitations, and the

_____

[6]  The statute provides:

> If, at any time within five years after the status of a person has been otherwise adjusted under the provisions of section 1255 or 1259 of this title or any other provision of law to that of an alien lawfully admitted for permanent residence, it shall appear to the satisfaction of the Attorney General that the person was not in fact eligible for such adjustment of status, the Attorney General shall rescind the action taken granting an adjustment of status to such person and cancelling deportation in the case of such person if that occurred and the person shall thereupon be subject to all provisions of this chapter to the same extent as if the adjustment of status had not been made.

8 U.S.C. § 1256(a).

other circuits have not yet decided the issue.  See Asika v.
Ashcroft, 362 F.3d 264 (4th Cir. 2004); Stolaj v. Holder, 577
F.3d 651, 656 (6th Cir. 2009); Kim v. Holder, 560 F.3d 833,
836-38 (8th Cir. 2009); Monet v. INS, 791 F.2d 752, 754 (9th Cir.
1986).

The disputed issue here is whether the threat of rescission
or removal proceedings is uncertain and contingent, or is
sufficiently certain to warrant declaratory judgment.[7]  See Texas
v. United States, 523 U.S. 296, 300 (1998) ("[a] claim is not
ripe for adjudication if it rests upon contingent future events
that may not occur as anticipated, or indeed may not occur at
all.").  Plaintiff must show that the probability of removal
proceedings being brought is "real and substantial, of sufficient
immediacy and reality to warrant the issuance of a declaratory
judgment." Travelers Ins. Co. v. Obusek, 72 F.3d 1148, 1154 (3d
Cir. 1995) (internal quotations omitted).

As a matter of settled law, Plaintiff's claim that her
possible travel to other circuits makes the case ripe is
incorrect.  It is true that the threat of enforcement in another

---

[7]  To the extent Plaintiff seeks declaratory relief stating she
has been and continues to be a lawful permanent resident of
the United States, she has not explained how that relief is
different from the issues that must be determined on her petition
for review of the naturalization decision.  It appears to the
Court that the only issue that will not be decided on her
naturalization petition is whether she could be removed if the
Court does not grant her naturalization because she failed to
obtain the required waiver.

circuit can be sufficient to create standing and ripeness for pre-enforcement review.  See Virginia Society for Human Life, Inc. v. Federal Election Com'n, 263 F.3d 379, 388-89 (4th Cir. 2001) (finding that even if agency enforcement proceedings were barred by Fourth Circuit precedent, the possibility of enforcement in another circuit was sufficient to confer standing and create a ripe controversy).  Here, however, Plaintiff has not alleged that she intends to travel outside the Third Circuit, much less with the specificity required to make the threat of enforcement imminent.  The Supreme Court has held that speculative plans to travel to a location at some unspecified time do not create the required immediacy for standing.  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992).

The sole question is therefore whether there is a sufficient threat of the institution of removal proceedings in this circuit to make the claim for declaratory judgment ripe.

To begin, it is not clear that the mere possibility of rescission or removal proceedings, even in the absence of other circumstances decreasing the likelihood of such proceedings, is sufficient to make a claim for declaratory judgment ripe.  The Southern District of New York has addressed the question of whether the mere possibility of removal proceedings is sufficient to create a case or controversy and found the case to be unripe. Ubiera v. Bell, 463 F. Supp. 181, 185 (S.D.N.Y. 1978).

But the Court need not reach the question of whether the generalized threat of removal proceedings makes the claim ripe, because other factors in this case make the possibility of rescission or removal proceedings even more remote. Specifically, Defendants have acknowledged that such proceedings would be unlawful.  Defs.' Reply Br. 5.  USCIS's representation that they have no plans to bring proceedings is not an express assurance of non-enforcement, see Salvation Army v. Dep't of Cmty. Affairs, 919 F.2d 183, 192 (3d Cir. 1990), nor is USCIS in the position of the City in Tait v. City Of Philadelphia, a case holding that a matter is not ripe when enforcement would require multiple substantial preparatory steps that have not been taken and do not appear likely to be taken in the foreseeable future. Tait v. City Of Philadelphia, 410 Fed. App'x 506, 510 (3d Cir. 2011).  But Defendants' specific acknowledgment in this case that Garcia affirmatively precludes an action for rescission or removal is arguably even more destructive to ripeness than a promise of non-enforcement.

Plaintiff argues that the findings of the USCIS on her naturalization application raise a specific and imminent threat of removal, contrary to Defendants' position taken in this case. But the question in the naturalization proceedings was whether Plaintiff had shown that she obtained her LPR status in accordance with substantive law, and not whether the statute of

13

limitations bars rescission or removal if her LPR status was not obtained lawfully.  It is also worth noting that although the Court can hypothesize ways in which the threat of removal might alter the day-to-day life of an individual, Plaintiff has not made any concrete arguments or allegations regarding why it is necessary for her to have a declaration that any removal proceedings brought in this circuit would contravene 8 U.S.C. § 1256(a).

In sum, Plaintiff does not have standing by virtue of her assertion that she might some day travel outside this judicial circuit.  And while this Court is not necessarily persuaded that declaratory judgment regarding the lawfulness of removal proceedings could never be ripe prior to the initiation of removal proceedings, Defendants' acknowledgment in this action that rescission or removal proceedings in this circuit would be unlawful is sufficient to remove whatever imminent threat of removal might otherwise be present.  Consequently, this Court lacks subject matter jurisdiction to grant Plaintiff a judgment stating that 8 U.S.C. § 1256(a) bars rescission or removal proceedings against her.[8]

---

[8]  As explained below, this issue may also become moot if the Court grants Plaintiff's application for naturalization, a further reason why the declaratory judgment sought is, at the moment, based on speculative hypotheses about what may happen.

## IV.   MOTION TO DISMISS

### A.   Standard of Review

Rule 8(a)(2) provides that "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."  Further, a "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, --U.S.--, 129 S.Ct. 1937, 1949 (2009); Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).

The Third Circuit requires that a district court presented with a motion to dismiss conduct a two-part analysis, as explained in Iqbal: first, the factual and legal elements of a claim should be separated.  The district court may accept all the complaint's well-pleaded facts as true, but may disregard any legal conclusions.  Iqbal, 129 S.Ct. at 1949-50.  Second, a district court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief."  Id.

When considering a motion to dismiss, a district court generally relies only upon "the complaint, attached exhibits, and matters of public record."  Sands v. McCormick, 502 F.3d 263, 268 (3d Cir. 2007).  The Court may also consider documents which are not physically attached to the pleadings but whose contents are

alleged in the complaint and whose authenticity is not contested. Pryor v. National Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002).

### B. Analysis

Defendants interpret the waiver provision found at 8 U.S.C. § 1182(a)(9)(B)(v) as requiring the filing of a written application for a waiver of inadmissibility. Defendants argue that because Plaintiff concedes she did not file a written application for waiver of inadmissibility, she could not have been granted a waiver after she voluntarily departed prior to her application for adjustment of status being approved. Therefore, they reason, because Plaintiff was never properly granted a waiver of inadmissibility, her LPR status was approved in error, making her ineligible to naturalize because "[N]o person shall be naturalized unless he has been lawfully admitted to the United States for permanent residence." 8 U.S.C. § 1429; see also Gallimore v. Attorney General of U.S., 619 F.3d 216, 224 (3d Cir. 2010) (holding that being "lawfully admitted" means having properly obtained that status in accordance with substantive law).

The waiver provision, § 1182(a)(9)(B)(v), reads: "The Attorney General has sole discretion to waive [§ 1182(a)(9)(B)(i)] in the case of an immigrant who is the spouse .

16

. . of a United States citizen or of an alien lawfully admitted for permanent residence, if it is established to the satisfaction of the Attorney General that the refusal of admission to such immigrant alien would result in extreme hardship to the citizen or lawful resident spouse . . . of such alien."  The particular procedures involved in obtaining such a waiver are left unstated. Moreover, regulations in place at the time of both the filing and approval of Plaintiff's application to adjust status did not address the type of waiver at issue in this case.  See 8 C.F.R. 212.7 (1997).  Indeed, while the regulations did mandate the filing of a written waiver application, they only mandated such procedures for those seeking waivers of inadmissibility under § 1182(g), § 1182(h), and § 1182(i).   See 8 C.F.R. § 212.7 (1997).[9]

Plaintiff contends that there was no requirement for a written application for waiver, and that a waiver was granted when she provided the interviewing INS officer with all information related to her application for adjustment of status, and the application was approved by the immigration officer.  In response, Defendants point to an internal agency memorandum from Paul W. Virtue, then Acting Executive Associate Commissioner of the INS.  Defs.' Ex. G.  The memorandum states that the filing of

_____

[9]  In 2009, the regulations were amended to apply the rule requiring the applicant to use form I-601 to all applications for waiver.  74 Fed. Reg. No. 26933 (June 5, 2009).

17

a written application for waiver is required in order for an
alien who has accrued more than 180 days of unlawful presence
before filing an adjustment of status application to obtain a
waiver of inadmissibility under § 1182(a)(9)(B)(v).  Id. at 3.

     Plaintiff is correct that this internal memorandum regarding
the proper procedure for waiver did not bind her.  Agencies are
largely free to design their own procedures, to the extent not
directly proscribed by statute or contrary to the constitutional
requirements of due process.  Vermont Yankee Nuclear Power Corp.
v. Natural Resources Defense Council, 435 U.S. 519, 524, 542
(1978).[10]  And in furtherance of this principle, procedural rules
are exempted from the requirement of a public notice and comment
period, required for substantive rulemaking.  5 U.S.C. §
553(b)(A).  However, as a minimum guarantee of due process, the
Administrative Procedure Act does require publication of even
procedural rules if they fall within certain enumerated
categories, including "the general course and method by which [an
agency's] functions are channeled and determined, including the
nature and requirements of all formal and informal procedures
available" and "rules of procedure, descriptions of forms

---

     [10]  Generally, "a rule that simply prescribes the manner in
which the parties present themselves or their viewpoints to the
agency does not alter the underlying rights or interests of the
parties," and therefore is procedural.  See Inova Alexandria
Hosp. v. Shalala, 244 F.3d 342, 349 (4th Cir. 2001) (internal
quotation and citation omitted).

18

available or the places at which forms may be obtained, and instructions as to the scope and contents of all papers, reports, or examinations."  5 U.S.C. § 552(a)(1).

In this case, a rule requiring applicants for waiver to submit a written waiver application is exactly the sort of rule that must be published under § 552.  Even if it were not covered by that rule, fundamental dictates of due process are unmet when a procedural rule "prescribes the manner in which the parties present themselves or their viewpoints to the agency" but is unpublished.  Cf. Salzer v. F.C.C., 778 F.2d 869, 875 (D.C. Cir. 1985) (finding that agency could not rely on a procedural rule that it did not notify the parties of).[11]

Defendants opted not to address Plaintiff's argument that the undisclosed requirement of a written waiver application was invalid.  This is perhaps because there is little that could be argued.  Plainly, both the APA and due process require notice of the rules that will govern an agency's procedures.  The USCIS cannot reject an application for naturalization on the basis of an undisclosed internal procedural rule that made adjustment of status improper.  Therefore, if Plaintiff did in fact obtain a waiver from the officer who adjudicated her application as she

---

[11]   Due process guarantees extend to both citizens and aliens, including unlawful aliens.  Zadvydas v. Davis, 533 U.S. 678, 693 (2001); Plyler v. Doe, 457 U.S. 202, 210 (1982); De Sousa v. Reno, 190 F.3d 175, 184 (3d Cir. 1999).

alleges, Compl. ¶ 13, then USCIS cannot revoke that waiver on the basis of Plaintiff's failure to comply with an undisclosed procedural hurdle.  5 U.S.C. § 552(a)(1) ("[A] person may not in any manner be required to resort to, or be adversely affected by, a matter required to be published in the Federal Register and not so published.").

Because Plaintiff alleges that the requirement was waived in the discretion of her immigration officer as an agent of the Attorney General, because the agency had no binding alternative procedure for obtaining waiver under § 1182(a)(9)(B)(v), and because there is no other disputed element of Plaintiff's claim for entitlement to citizenship, Plaintiff sufficiently alleges that she has met the requirements for citizenship.

## V.  MOTION FOR SUMMARY JUDGMENT

### A.  Standard of Review

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  Summary judgment will not be denied based on mere allegations or denials in the pleadings; instead, some evidence must be produced to

support a material fact.  Fed. R. Civ. P. 56(c)(1)(A); <u>United States v. Premises Known as 717 S. Woodward Street, Allentown, Pa.</u>, 2 F.3d 529, 533 (3d Cir. 1993).  However, the court will view any evidence in favor of the nonmoving party and extend any reasonable favorable inferences to be drawn from that evidence to that party.  <u>Hunt v. Cromartie</u>, 526 U.S. 541, 552 (1999).

Where the nonmoving party bears the burden of persuasion at trial, the moving party may be entitled to summary judgment merely by showing that there is an absence of evidence to support an essential element of the nonmoving party's case.  Fed. R. Civ. P. 56(c)(1)(B); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325 (1986).

### B.  Analysis

Defendants argue that, regardless of whether Plaintiff was required to file a written application for waiver, she has not sufficiently demonstrated that she was eligible for and was, in actuality, granted a waiver by any procedure.  Because Plaintiff does not adduce any evidence for this motion, such as an affidavit affirming the truth of the Complaint's allegations, the question is what favorable inference must be drawn for Plaintiff from the undisputed facts.  <u>See</u> <u>Hunt v. Cromartie</u>, 526 U.S. 541, 552 (1999).  Specifically, the dispositive issue is whether the undisputed fact that Plaintiff's application for adjustment of

status was granted is itself sufficient evidence that Plaintiff
received a waiver in order to meet her burden on this motion.
For the reasons explained below, it is sufficient in this
context.

By statute, Plaintiff bears the burden of demonstrating that
she meets the requirements for naturalization:  "[N]o person
shall be naturalized unless he has been lawfully admitted to the
United States for permanent residence. . . . [And] [t]he burden
of proof shall be upon such person to show that he entered the
United States lawfully, and the time, place, and manner of such
entry into the United States . . ."  8 U.S.C. § 1429; see also
Berenyi v. District Director, Immigration and Naturalization
Service, 385 U.S. 630, 637 (1967) ("[T]he burden is on the alien
applicant to show his eligibility for citizenship in every
respect.").

Being "lawfully admitted" means more than just having
obtained LPR status.  It means having properly obtained that
status in accordance with substantive law.  See Gallimore v.
Attorney General of U.S., 619 F.3d 216, 224 (3d Cir. 2010); De La
Rosa v. U.S. Dept. of Homeland Security, 489 F.3d 551, 554-555
(2d Cir. 2007).[12]  The law is clear that when USCIS finds that it

_____

[12]  Plaintiff's efforts to limit these cases to instances in
which the agency subsequently found that the LPR status was
gained by fraud is an argument recently rejected by the Third
Circuit Court of Appeals.  Gallimore v. Attorney General of U.S.,
619 F.3d 216, 224 (3d Cir. 2010) ("[W]e discern no principled

erroneously granted LPR status, it is the immigrant's burden to adduce evidence that LPR status was in fact substantively proper. De La Rosa, 489 F.3d at 554-555.  Thus, if USCIS adduced evidence that Plaintiff failed to disclose her inadmissibility, or that USCIS did not waive Plaintiff's inadmissibility, or that USCIS waived it in error, then it would not be a permissible inference that the fact that her LPR status was granted meant that she was eligible for and received waiver.

But this case is unlike the cases upon which Defendants rely, because USCIS has not found that it did not waive Plaintiff's inadmissibility or waived it in error, or adduced any evidence in support of those propositions.  Instead, USCIS incorrectly concluded that the lack of written waiver meant there had been no valid waiver.  Once that incorrect conclusion is disregarded for the reasons explained above with respect to publication of procedures — as the Court is free to do on this de novo review — the Court is left with the undisputed fact that Plaintiff was granted LPR status and whatever favorable inferences may be drawn from that fact.

On the procedural posture of summary judgment in which all reasonable inferences are to be drawn in favor of Plaintiff as

---

distinction between (1) finding a status adjustment not 'lawful' because the applicant procured it through fraud; and (2) finding a status adjustment not 'lawful' because the applicant was not legally entitled to it for any other reason.")

non-movant, the question before the Court is whether one may reasonably infer, in the absence of evidence to the contrary, that an immigrant who needed a waiver to get LPR status, and who did in fact get LPR status, therefore got a waiver.  Hunt v. Cromartie, 526 U.S. 541, 552 (1999).  Such an inference is reasonable.  The undisputed fact of having been granted LPR status is not irrebuttable proof of having been lawfully admitted, and it may not even afford an immigrant a rebuttable presumption of lawful admittance, but it is a permissible inference that such status was afforded lawfully, and in the absence of any evidence to the contrary, this is all that is required for Plaintiff to prevail on Defendants' motion for summary judgment.

Unlike the cases relied upon by Defendants, in which an immigrant's LPR status was facially prohibited by law or affirmatively found to have been procured by fraud or erroneously granted, when the USCIS presents no facts calling LPR status into question and cannot point to any law that prohibited Plaintiff from obtaining LPR status, then the undisputed fact of having been granted LPR status permits an inference that an immigrant has been lawfully admitted.

## IV.   CONCLUSION

The determination of whether Plaintiff is protected from rescission of her LPR status and removal even if she failed to receive a waiver is an issue that is not yet ripe for review. But Plaintiff does allege the prima facie facts necessary for her petition for naturalization, and when viewing all inferences in her favor, the undisputed fact of her having been granted LPR status is sufficient to create a dispute of material fact about whether she meets the required elements for naturalization. Therefore, Plaintiff's claim for declaratory judgment will be dismissed without prejudice, but Defendants' motion will otherwise be denied.  The accompanying Order will be entered.


**August 22, 2011**                          **s/ Jerome B. Simandle**
Date                                         JEROME B. SIMANDLE
                                             United States District Judge